IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:02CV00014-MU

| | |
|---|---|
| CENTRAL AVENUE, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| THE CITY OF CHARLOTTE, NORTH ) | |
| CAROLINA, a North Carolina municipal ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before this court upon Defendants' Motion for Summary Judgment (Document #46). Plaintiffs Polo South, Inc., Independence News, Inc. and O'Shields, Inc. filed a brief in opposition to this motion, and Plaintiffs Central Avenue and Video, Inc. and Riverside, Inc. filed a separate brief in opposition. Defendants filed a timely reply, therefore, this matter is now ripe for review.

**I.     FACTUAL BACKGROUND**

This case deals with two separate ordinances, the Adult Zoning Ordinance ("AZO") and the Sexually Oriented Business Ordinance ("SOB").

*Adult Zoning Ordinance*

The City of Charlotte's City Council adopted the AZO on January 18, 1994. The AZO limits adult businesses to B-2 (business), UMUD (Uptown Mixed Use District), and I-1 and I-2 (industrial) zoning districts. Within these districts, adult bookstores and mini motion picture theaters must be at least 1,500 feet from any residential zoning district, school, church, child care center, park or playground (*i.e.* "protected uses"), and at least 1,000 feet from another adult

business. Adult live entertainment businesses must be at least 1,000 feet from a protected use and at least 500 feet from another adult business. No more than one adult business may be in the same structure, and preexisting adult businesses not in compliance with the protected use separation requirements are required to close or relocate to a conforming location within eight years. The AZO's preamble states:

> Studies have shown that lowered property values and increased crime rates tend to accompany and are brought about by the concentration of adult establishments as defined herein. Regulation of these uses is necessary to insure that these effects do not contribute to the blighting of surrounding neighborhoods and to protect the integrity of the City's schools, churches, child care centers, parks and playgrounds which are typically areas in which juveniles congregate. It is the intent of this provision to establish reasonable regulations to prevent a concentration of adult establishments within the City of Charlotte and to separate adult establishments from . . . sensitive uses. . . .

The City of Charlotte ("the City") amended the AZO on several occasions after its adoption. These amendments refined definitions, eliminated redundant provisions, closed a conditional district "loophole," and removed a ban on the Zoning Board of Adjustments' ("ZBA") ability to grant variances to the ordinance.[1]

*Sexually Oriented Business Ordinance*

The City of Charlotte's City Council adopted the second ordinance at issue in this case on August 23, 1999. The City states that it enacted the SOB after a citizen complained that adult establishments were employing underage erotic dancers. The SOB: (1) requires that all sexually oriented businesses obtain a license; (2) makes employment of a minor unlawful; (3) regulates

---

[1] Charlotte City Ordinance No. 489 amended the AZO by removing language that barred the ZBA from granting variances to the AZO and by providing guidelines for granting such variances stating: ". . . [B]efore granting a variance from the separation requirements . . . the Board of Adjustment shall find that thoroughfares, traffic circulation patterns, structures or other natural or man-made geographic or topographic features are likely to provide an adequate measure of protection for the protected zoning or use from any secondary effects of the adult establishment."

adult live entertainment businesses by prohibiting "VIP rooms;" (4) establishes "open booth" provisions for adult mini motion picture theaters; and (5) provides operational requirements for "clothing modeling studios." The SOB's purpose is "to regulate sexually oriented businesses to promote the health, safety, and general welfare of the citizens of Charlotte, and to establish reasonable and uniform regulations to prevent the deleterious effects of sexually oriented businesses . . .."

*The Plaintiffs*

Plaintiffs own and operate sexually oriented businesses that are subject to the City's AZO and SOB. Plaintiffs Central Avenue and Video, Inc. ("Central Avenue") and Independence News, Inc. ("Independence News") operate adult bookstores that do not meet requirements of the AZO and were required by the AZO's "amoritization" provision to close or relocate to a conforming location by January 18, 2002. Similarly, Plaintiffs O'Shields Entertainment, Inc. ("O'Shields") and Polo South, Inc. ("Polo South") operate live adult entertainment establishments that fall under the amoritization provision as of the same date. Finally, Plaintiff Riverside Video Plus, Inc. ("Riverside") operates a non-conforming adult bookstore that was adopted into Charlotte's planning jurisdiction on October 22, 2001 and is subject to the amoritization provision on October 22, 2009. Defendant represents to the Court that all the Plaintiffs are licensed under the SOB and are presumably in compliance with the ordinance.

## II. PROCEDURAL HISTORY

Approximately one year before the AZO amortization deadline, the owners of three affected businesses filed a federal lawsuit challenging the AZO and SOB Ordinance. *See Queen City Video & News, Inc. v. City of Charlotte*, 3:00CV618 (W.D.N.C.). In addition, Central Avenue and Video and Independence News initiated this action one week before the

amoritization deadline. Shortly thereafter, this Court entered a preliminary injunction in the *Queen City* case enjoining the City from enforcing the amoritization provision against any affected business pending final resolution. The Court then held this action in abeyance pending the disposition of the *Queen City* case.

On August 2, 2002, this Court granted summary judgment for the City in the *Queen City* case on all claims except whether the AZO "provided no or an insufficient number of places to which the First Amendment-protected adult businesses now in operation can legally relocate." Thereafter, the parties in *Queen City* entered into a Stipulation of Voluntary Dismissal with Prejudice, and this Court activated the pending action. The City then consented to the intervention of Plaintiffs Riverside Video, O'Shields Entertainment, and Polo South in this case and agreed that it would not enforce the amoritization provision against Plaintiffs until disposition of this action.

Since this action was first filed by Central Avenue and Video and Independence News, the parties filed two amended complaints. The first amended complaint filed by Central Avenue, Independence News, O'Shields and Polo South asserted only one claim for relief that demands injunctive relief for violation of first amendment rights. Plaintiffs Central Avenue and Riverside filed a second amended complaint, however, in which the parties assert claims including: 1) free speech violations; 2) due process violations; and 3) equal protection violations.

On June 3, 2004, this Court granted the City's Motion for Partial Judgment on the Pleadings and dismissed the "as-applied" challenge to the secondary effects rationale of the AZO that was included in the parties' claim for first amendment violations. In addition, the Court granted Plaintiffs' motion to dismiss their claim that the SOB imposed an arbitrary or impermissible licensing fee.

III.  **DISCUSSION**

After reviewing the parties' arguments and relevant case law, the Court finds that Plaintiffs' Motion for Summary Judgment is hereby **GRANTED, in part and DENIED, in part**.

A.  **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); *Anderson*, 477 U.S. at 250. This standard is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the Plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151.

    **B.**    **Plaintiffs Independence News, Polo South and O'Shields assert Free Speech Violations**

In their amended complaint, Plaintiffs Independence News, Polo South and O'Shields assert one claim supported by three arguments - that the AZO violates the free speech clause of the First Amendment and is unconstitutional. The argument of unconstitutionality is based on three premises: 1) the ordinances do not provide adequate alternative sites for adult businesses to relocate; 2) the AZO was not drafted to eliminate legitimate secondary effects and 3) the AZO's variance provision does not allow the City's Zoning Board of Adjustment to consider factual

evidence negating the secondary effects of a particular adult business, therefore the ordinance was not genuinely created to target secondary effects. This Court denies the City's summary judgment motion on this claim based on only one of Plaintiffs' three arguments - that the AZO does not provide adequate alternative avenues of communication. Plaintiffs' additional arguments regarding secondary effects have no merit.

In *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986), the United States Supreme Court established a test for determining whether zoning ordinances are constitutional. When an ordinance "does not ban adult [businesses] altogether," but merely places restrictions on the businesses' proximity to other sensitive locations (i.e. schools, churches, residential areas), the ordinance is "properly analyzed as a form of time, place, and manner regulation[s]." *Id.* at 46. Next, the Court stated:

> Describing the ordinance as a time, place, and manner regulation is, of course, only the first step in our inquiry. This Court has long held that regulations enacted for the purpose of restraining speech on the basis of content presumptively violate the First Amendment. . . . On the other hand, so-called "content neutral" time, place, and manner regulations are acceptable as long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.

*Id. at* 46-7. Moreover, the Court discussed and largely endorsed its holding in *Renton* in *City of Los Angeles v. Alameda*:

> If the regulation were content based, it could be presumptively invalid and subject to strict scrutiny. We held, however, that the . . . ordinance was aimed not at the content of the films shown at adult theaters, but rather at the secondary effects of such theaters on the surrounding community, namely at crime rates, property values, and the quality of the city's neighborhoods. Therefore, the ordinance was deemed content neutral. Finally, given this finding we stated that the ordinance was designed to serve a substantial government interest and that reasonable alternative avenues of communication remained available . . . and we upheld [the] ordinance.

535 U.S. 425, 434 (2002).

Here, the AZO does not ban adult businesses altogether and is properly analyzed as time,

place and manner regulation. Also, the Preamble to the AZO shows that the ordinance is aimed at secondary effects such as the increased crime and lower property rates that accompany adult businesses. Therefore, this Court finds that the AZO targets legitimate secondary effects and is content neutral.

Plaintiffs Independence News, Polo South and O'Shields argue that the Charlotte City Council adopted the AZO based upon political and moral considerations instead of a legitimate concern regarding secondary effects. Specifically, these Plaintiffs assert the following: 1) the City's staff and Council members made statements that prove content suppression as the AZO's aim; 2) the AZO did not addresses one of its stated goals (keeping bars from converting to adult businesses) because the AZO does not apply to conditional districts; and 3) amortizing adult businesses that are too close to protected uses but not those that are too close to another adult business is improper. This Court holds that none of these assertions are relevant to the secondary effects analysis required in *Renton*. In *Renton*, the Supreme Court held:

> 'It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive . . . . What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . .' [A] 'predominate intent' . . . is more than adequate to establish that the city's pursuit of its zoning interests was unrelated to the suppression of free expression.

*Renton*, 475 U.S. at 48 (quoting *United States v. O'Brien*, 391 U.S. 367, 383-84.). Here, the AZO's predominate intent, as described in its preamble, is to curb increased crime and devalued property in areas surrounding adult businesses. Random statements made by City Council members, details about conditional districts, and decisions to amortize fewer adult businesses do not change the City's predominate intent to address secondary effects, nor do they persuade the Court that the City had a "secret" intent to stifle protected speech.

Plaintiffs Independence News, Polo South and O'Shields' second allegation is that the AZO is unconstitutional because its variance provision does not allow the City's Zoning Board of Adjustment to consider factual evidence that an individual adult business will not have adverse secondary effects. The Supreme Court in *Renton* assessed the ordinance at issue as a whole, and this Court will do the same. Even considering Plaintiffs' allegation, the Court finds that overall the AZO is aimed at curing secondary effects of adult businesses.

Continuing the *Renton* analysis, the Court holds that the AZO intends to serve a substantial government interest but that genuine issues of material fact exist as to the question of alternative avenues of communication. The AZO serves the substantial governments interests of protecting areas in the City where children congregate such as churches, schools, child care centers and recreational areas from increased crime and decreased property values. The Court finds, however, the evaluation of site availability is a matter of fact that depends heavily on the analysis of witnesses knowledgeable about zoning and land use in the Charlotte area. The City asserts 9.08% of commercial acreage in Charlotte is available for adult bookstores and 15.78% is available for adult live businesses. In addition, the City cites methodology and experts that should be evaluated by a jury, not the Court at the summary judgment stage.

Further, the City urges that the Court consider the Internet as a way that the AZO allows for alternative avenues for communication. Although the Internet has changed the legal and cultural landscape in obvious ways, the City has not presented an argument that the Internet supplants the need for physical avenues for communication. There are genuine questions of fact as to whether the resources available on the Internet are identical to those provided by the Plaintiffs. In addition, questions of fact arise as to whether access to the Internet is as universal

as access to physical structures.² For these reasons, this Court declines to accept this rationale.

The Court denies the City's motion for summary judgment on Plaintiffs free speech violation claim but only as to the question of alternative avenues of communication left by the AZO.

### C. Plaintiffs Central Avenue and Riverside assert Free Speech Violations

Plaintiffs Central Avenue and Riverside also argue that the AZO is content-based and fails to withstand strict scrutiny when assessed under the Supreme Court's *Renton* analysis. Alternatively, they argue that even if the Court considers the ordinance content-neutral and applies intermediate scrutiny, the AZO does not serve a substantial governmental interest and does not provide adequate alternative avenues of communication. Again, the Court finds that the AZO passes each step of the *Renton* analysis for summary judgment purposes, except the last requirement for reasonable alternative avenues of communication. The reasonableness and number of alternative avenues of communication is a factual dispute, and this Court denies summary judgment on Plaintiffs Central Avenue and Riverside's free speech claim as to that question only.

### D. Plaintiffs Central Avenue and Riverside assert that the Sexually Oriented Business Ordinance and the Adult Zoning Ordinance impose an impermissible prior restraint

Plaintiffs Central Avenue and Riverside also assert that both the AZO and SOB impose impermissible prior restraints and violate the First Amendment. Prior restraints are not unconstitutional *per se*, however, any system of prior restraint bears a heavy presumption of invalidity. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). A system of prior restraint

---

² We do not mean for this list of questions to be exhaustive, merely to illustrate why the Court does not find this reasoning to be compelling.

must meet the following requirements to be constitutionally valid: 1) no government official or agency may have unbridled discretion; 2) the system must require that its decision maker issue or deny the license in a reasonable amount of time; and 3) the system must provide for prompt judicial review. *See id.* at 225-27.

*Sexually Oriented Business Ordinance*

The Court finds that the SOB does not create an unconstitutional prior restraint as a matter of law, therefore, it grants Defendants summary judgment motion as to this claim.

First, Plaintiffs argue that 1) the SOB provides unbridled administrative discretion and 2) that the ordinance does not provide a constitutionally adequate process for judicial review. This Court previously examined these issues in the earlier *Queen City* case and held that "there was no risk that expression, under this [SOB] Ordinance, could be suppressed due to unbridled administrative discretion" and that "the review process is constitutional."

Second, the Court finds that the SOB requires a decision under the ordinance in a reasonable amount of time. Under the ordinance, the chief of police must approve or deny a completed application within thirty days, and if the chief fails to act within this time, the applicant may begin operating until a decision is made. The Fourth Circuit found that a 90-day approval period for an adult business conditional use permit was constitutionally permissible. *Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634 (4th Cir. 1999). Therefore, based on Fourth Circuit precedent and the specific protections provided for applicants in the SOB ordinance, this Court finds that the SOB requires that a decision in a reasonable amount of time.

*Adult Zoning Ordinance*

Similarly, Plaintiffs argue that the AZO is an unconstitutional prior restraint based on its variance provision, a provision that allows the Zoning Board of Adjustment to grant variances

from the AZO and provides guidelines for granting such variances. The AZO's variance provision provides:

> [B]efore granting a variance from the separation requirements . . . the Board of Adjustment shall find that thoroughfares, traffic circulation patterns, structures or other natural or man-made geographic or topographic features are likely to provide an adequate measure of protection for the protected zoning or use from any secondary effects of the adult establishment.

In *Mom N Pops, Inc. v. The City of Charlotte*, this Court held that the main body of the AZO in general was not a prior restraint because:

> [The AZO] does not involve appraisal of facts, exercise of judgment, and formation of opinion by administrators whose discretion is not bridled by objective criteria. The Charlotte zoning administrator merely determines what kind of business, by reference to statutory definitions. This is not the sort of 'discretion' that renders a zoning ordinance a prior restraint.

979 F.Supp. 372, 389 (W.D.N.C. 1997). Defendants admit, however, that the Court in its decision only considered the "by right" zoning treatment of adult uses and not the variance mechanism. Defendants contend that it is unaware of any case law holding a zoning ordinance unconstitutional because of its variance. This contention, however, is not enough to persuade this Court that a genuine issue of material fact does not exist as to certain aspects of Plaintiffs' prior restraint claim. Whether the AZO's variance provision requires ZBA to issue a prompt decision and the extent of the Board's discretion is not known by the Court and not fully discussed by Defendants. Therefore, the Court cannot make those determinations and declines to grant summary judgment as to these aspects of Plaintiffs' claim. The Court, however, finds that adult businesses under the AZO are provided the same judicial review process that this Court found constitutional in both the *Queen City* case and this case with respect to the SOB. Therefore, any arguments by Plaintiffs that the AZO and its variance provision are a prior restraint based on a lack of judicial review is dismissed the Court.

### E. Plaintiffs Central Avenue and Riverside assert that the Adult Zoning Ordinance violates the due process clause of the Fourteenth Amendment

Plaintiffs Central Avenue and Riverside allege that the AZO violates their procedural due process rights. The Due Process clause prohibits states from depriving individuals of "life, liberty or property without due process of law," U.S. Const. Amend. XIV, § 1, and the United States Supreme Court has interpreted this clause as having procedural and substantive components. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Defendant does not persuasively argue in its Reply that the elements for a procedural due process claim cannot be satisfied and no genuine issue of material fact exists. Therefore, the Court declines to grant summary judgment as to Plaintiffs Central Avenue and Riverside's procedural due process claim.

### F. Plaintiffs Central Avenue and Riverside assert that the Sexually Oriented Business ordinance and Adult Zoning Ordinance violate their substantive due process rights and the Equal Protection clause of the Constitution

Plaintiffs argue their substantive due process and Equal Protection claims together. Plaintiffs Central Avenue and Riverside allege that the AZO and its variance procedure violate their substantive due process rights and the Equal Protection clause of the Fourteenth Amendment. Plaintiffs argue that because they were denied variances by the ZBA that they were treated differently than similarly situated entities, namely the adult businesses that were granted variances.

Plaintiffs provide very little legal support for their arguments, but the City fails to convince the Court that no genuine issues of material fact exist. The City relies on a North Carolina Court of Appeals case that instructs courts to look at factual situations for different

variance decisions, and it points to radial maps and decision letters for variances cases decided by the ZBA.  These assertions, however, only highlight factual issues that this Court may not determine on summary judgment.  Therefore, this Court denies the City's motion for summary judgment as to Plaintiffs Central Avenue and Riverside's substantive due process and equal protection claims.

> **G.** **Plaintiffs Central Avenue and Riverside's free speech claim alleges that the Sexually Oriented Business ordinance and Adult Zoning Ordinance are unconstitutional because they do not serve substantial and compelling governmental interests and are not narrowly tailored**

Plaintiffs Central Avenue and Riverside's Amended Complaint contains two allegations within its third count for "free speech violations" that claim the SOB and AZO discriminate against viewpoint without being narrowly tailored or serving a substantial and compelling governmental interest.  Defendant moves to dismiss these allegations on summary judgment, and this Court will grant the City's request.

"A regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  Moreover, the Court in *Ward* noted that the narrowly tailored requirement is satisfied "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* at 800.  "[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative," according to the Court. *Id.*

*Sexually Oriented Business Ordinance*

Here, the SOB establishes operational restrictions for adult live entertainment businesses,

mini motion picture theaters, and clothing modeling studios. In addition, the SOB contains prohibitions on employing minors and requires all adult businesses to obtain a license. The substantial government interests served by the SOB are listed in the ordinance and include promoting the health, safety, and general welfare of Charlotte citizens and protecting these citizens from increased crime, decreased property values, the spread of communicable diseases. The Court finds that requiring adult businesses to obtain a license is a narrowly tailored measure to advance these interests. Moreover, these regulations are narrowly tailored to serve the substantial governmental interest of protecting minors from harmful adult activity. Therefore, the Court finds that no genuine issue of material facts exists as to Plaintiffs allegation that the SOB causes unconstitutional viewpoint discrimination and such an allegation is dismissed on summary judgment.

*Adult Zoning Ordinance*

Again, the Court finds that the AZO is designed to further the substantial content-neutral interests of curbing crime and decreased property values that are caused by adult businesses and protecting sensitive uses from being harmed by adult activity. Plaintiffs' allegation suggest that adult bookstores are more severely regulated than other adult businesses. Plaintiffs, however, give no support for this assertion. In addition, the Court holds that the AZO is a narrowly tailored regulation. The AZO requires adult businesses to operate away from protected areas but the regulation only requires that those businesses operate outside a restricted area, namely 1,000 feet from the protected use. Therefore, this Court holds that no material issue of genuine fact exists as to Plaintiffs' allegation of viewpoint discrimination by the AZO and such allegation is dismissed on summary judgment.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment (Document #46) is hereby **GRANTED, in part and DENIED, in part**.

Accordingly, summary judgment is **GRANTED** as to the following:

1) all elements under the *Renton* analysis in Plaintiffs Polo South, Independence News, and O'Shields' free speech claim, except the element of alternative avenues of communication;

2) all elements under the *Renton* analysis in Plaintiffs Central Avenue and Riverside's free speech claim, except the element of alternative avenues of communication;

3) Plaintiffs Central Avenue and Riverside's prior restraint claim regarding the Sexually Oriented Business ordinance;

4) the element of adequate judicial review in Plaintiffs Central Avenue and Riverside's prior restraint claim regarding the Adult Zoning Ordinance;

5) Plaintiffs Central Avenue and Riverside's allegation of viewpoint discrimination regarding the AZO; and

6) Plaintiffs Central Avenue and Riverside's allegation of viewpoint discrimination regarding the SOB.

Accordingly, summary judgment is **DENIED** as to the following:

1) the element of alternative avenues of communication in Plaintiffs Polo South, Independence News, and O'Shields' free speech claim;

2) the question of alternative avenues of communication in Plaintiffs Central Avenue and Riverside's free speech claim;

3) Plaintiffs Central Avenue and Riverside's prior restraint claim regarding the Adult Zoning Ordinance, except as to the element of adequate judicial review;

4) Plaintiffs Central Avenue and Riverside's procedural due process claim; and

5) Plaintiffs Central Avenue and Riverside's substantive due process and equal protection claims.

Signed: September 6, 2006

Graham C. Mullen
United States District Judge

.