IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:02CV00014-MU

| CENTRAL AVENUE, INC., *et al.*, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| THE CITY OF CHARLOTTE, NORTH CAROLINA, a North Carolina municipal corporation, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court after a Bench Trial held on March 3, 2008. For the reasons set forth below, this Court finds in favor of the Defendant, the City of Charlotte, on all issues.

**I.     FACTUAL BACKGROUND**

This case deals with two separate ordinances, the Adult Zoning Ordinance ("AZO") and the Sexually Oriented Business Ordinance ("SOB").

*Adult Zoning Ordinance*

The City of Charlotte's City Council adopted the AZO on January 18, 1994. The AZO limits adult businesses to B-2 (business), UMUD (Uptown Mixed Use District), and I-1 and I-2 (industrial) zoning districts. Within these districts, adult bookstores and mini motion picture theaters must be at least 1,500 feet from any residential zoning district, school, church, child care center, park or playground (*i.e.* "protected uses"), and at least 1,000 feet from another adult business. Adult live entertainment businesses must be at least 1,000 feet from a protected use

1

and at least 500 feet from another adult business. No more than one adult business may be in the same structure, and preexisting adult businesses not in compliance with the protected use separation requirements are required to close or relocate to a conforming location within eight years. The AZO's preamble states:

> Studies have shown that lowered property values and increased crime rates tend to accompany and are brought about by the concentration of adult establishments as defined herein. Regulation of these uses is necessary to insure that these effects do not contribute to the blighting of surrounding neighborhoods and to protect the integrity of the City's schools, churches, child care centers, parks and playgrounds which are typically areas in which juveniles congregate. It is the intent of this provision to establish reasonable regulations to prevent a concentration of adult establishments within the City of Charlotte and to separate adult establishments from . . . sensitive uses. . . .

The City of Charlotte ("the City") amended the AZO on several occasions after its adoption. These amendments refined definitions, eliminated redundant provisions, closed a conditional district "loophole," and removed a ban on the Zoning Board of Adjustments' ("ZBA") ability to grant variances to the ordinance.[1]

*Sexually Oriented Business Ordinance*

The City of Charlotte's City Council adopted the second ordinance at issue in this case on August 23, 1999. The City states that it enacted the SOB after a citizen complained that adult establishments were employing underage erotic dancers. The SOB: (1) requires that all sexually oriented businesses obtain a license; (2) makes employment of a minor unlawful; (3) regulates adult live entertainment businesses by prohibiting "VIP rooms;" (4) establishes "open booth"

---

[1] Charlotte City Ordinance No. 489 amended the AZO by removing language that barred the ZBA from granting variances to the AZO and by providing guidelines for granting such variances stating: ". . . [B]efore granting a variance from the separation requirements . . . the Board of Adjustment shall find that thoroughfares, traffic circulation patterns, structures or other natural or man-made geographic or topographic features are likely to provide an adequate measure of protection for the protected zoning or use from any secondary effects of the adult establishment."

provisions for adult mini motion picture theaters; and (5) provides operational requirements for "clothing modeling studios." The SOB's purpose is "to regulate sexually oriented businesses to promote the health, safety, and general welfare of the citizens of Charlotte, and to establish reasonable and uniform regulations to prevent the deleterious effects of sexually oriented businesses . . .."

*The Plaintiffs*

Plaintiffs own and operate sexually oriented businesses that are subject to the City's AZO and SOB. Plaintiffs Central Avenue and Video, Inc. ("Central Avenue") and Independence News, Inc. ("Independence News") operate adult bookstores that do not meet requirements of the AZO and were required by the AZO's "amorization" provision to close or relocate to a conforming location by January 18, 2002. Similarly, Plaintiffs O'Shields Entertainment, Inc. ("O'Shields") and Polo South, Inc. ("Polo South") operate live adult entertainment establishments that fall under the amortization provision as of the same date. Finally, Plaintiff Riverside Video Plus, Inc. ("Riverside") operates a non-conforming adult bookstore that was adopted into Charlotte's planning jurisdiction on October 22, 2001 and is subject to the amoritization provision on October 22, 2009.

After this Court's Orders on Motions for Summary Judgment, entered on June 3, 2004 and September 6, 2006, Central Avenue Video and Riverside Video Plus are the only plaintiffs remaining in this case.

**II.　　PROCEDURAL HISTORY**

Approximately one year before the AZO amoritization deadline, the owners of three affected businesses filed a federal lawsuit challenging the AZO and SOB Ordinance. *See Queen*

*City Video & News, Inc. v. City of Charlotte*, 3:00CV618 (W.D.N.C.). In addition, Central Avenue and Video and Independence News initiated this action one week before the amoritization deadline. Shortly thereafter, this Court entered a preliminary injunction in the *Queen City* case enjoining the City from enforcing the amoritization provision against any affected business pending final resolution. The Court then held this action in abeyance pending the disposition of the *Queen City* case.

On August 2, 2002, this Court granted summary judgment for the City in the *Queen City* case on all claims except whether the AZO "provided no or an insufficient number of places to which the First Amendment-protected adult businesses now in operation can legally relocate." Thereafter, the parties in *Queen City* entered into a Stipulation of Voluntary Dismissal with Prejudice, and this Court activated the pending action. The City then consented to the intervention of Plaintiffs Riverside Video, O'Shields Entertainment, and Polo South in this case and agreed that it would not enforce the amoritization provision against Plaintiffs until disposition of this action.

Since this action was first filed by Central Avenue and Video and Independence News, the parties filed two amended complaints. The first amended complaint filed by Central Avenue, Independence News, O'Shields and Polo South asserted only one claim for relief that demands injunctive relief for violation of first amendment rights. Plaintiffs Central Avenue and Riverside filed a second amended complaint, however, in which the parties assert claims including: 1) free speech violations; 2) due process violations; and 3) equal protection violations.

On June 3, 2004, this Court granted the City's Motion for Partial Judgment on the Pleadings and dismissed the "as-applied" challenge to the secondary effects rationale of the AZO

that was included in the parties' claim for first amendment violations.  In addition, the Court granted Plaintiffs' motion to dismiss their claim that the SOB imposed an arbitrary or impermissible licensing fee.

Although Plaintiffs stated numerous claims against the AZO and SOB, many of those, including all that go to the SOB, have been previously resolved through the Court's June 3, 2004 Order on Defendant's "Motion for Partial Judgment on the Pleadings" (Document #40) and September 6, 2006 Order on Defendant's "Motion for Summary Judgment" (Document #69).

In its Order on September 6. 2006, this Court granted in part and denied in part Defendant Charlotte's Motion for Summary Judgment.  After that order, the Parties filed a joint statement of issues remaining for trial and stipulation as to where the burden of proof/persuasion falls on each issue (Document #70). According to that statement, the remaining issues are as follows:

1. Does Defendant City of Charlotte's Adult Zoning Ordinance ("AZO") unreasonably limit Plaintiffs' alternative avenues of communication?
2. Does Defendant City of Charlotte's Variance mechanism operate as a "prior restraint" on Plaintiffs' First Amendment protected activities, and if so, is it an unconstitutional prior restraint because it either: (a) vests the Zoning Board of Adjustment with unbridled discretion; or (b) fails to ensure a prompt administrative decision?
3. a. Was the Zoning Board of Adjustment's decision to deny Central Avenue Video's and Riverside Video's variance requests arbitrary and capricious and, therefore, in violation of Central Avenue Video and Riverside Video's substantive due process rights?

   b. By denying Central Avenue Video's and Riverside Video's variance requests while granting variances to other adult businesses, did the Zoning Board of Adjustment violate Central Avenue Video's and Riverside Video's equal protection rights?

4. Did Defendant fail to provide Central Avenue Video and Riverside

>Video with meaningful notice such that they could be meaningfully heard
>on their zoning variance requests in violation of their procedural due
>process rights?

The Plaintiffs have now abandoned all of the remaining claims other than (2) and (3)(b). These remaining two claims, which are stated only by Plaintiffs Central Video and Riverside Video, are now before the Court.

### III. DISCUSSION

After holding the bench trial and reviewing the parties' arguments and relevant case law, the Court finds in favor of the City of Charlotte on all remaining counts.

**A. Defendant City of Charlotte's Variance mechanism does not operate as a "prior restraint" on Plaintiffs' First Amendment protected activities.**

A "prior restraint" exists when speech is conditioned upon the prior approval of public officials. *See, e.g.*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Although prior restraints "are not unconstitutional per se," they come to court bearing a heavy presumption against their validity. *Id.* at 558. Prior restraints are presumptively invalid because they typically involve "two evils that will not be tolerated": (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license. *FW/PBS v. City of Dallas*, 493 U.S. 215, 225-27 (1990).

Here, Plaintiffs assert that the AZO variance mechanism is a prior restraint doctrine, but the Court finds that the variance mechanism does not serve as a prior restraint because the Plaintiffs' speech is permitted at "by right" locations without a variance. Central Video and Riverside Video could open and operate their adult businesses "by right" at any location within Charlotte's zoning jurisdiction that meets the zoning regulations without any permission or

decision from the ZBA. This regulatory regime does not constitute a system of prior restraint. *Mom N Pops, Inc. v. City of Charlotte,* 979 F.Supp. 372 (1997), *aff'd per curiam,* 162 F.3d 1155 (4th Cir. 1998). By offering the "by-right" locations, the City allows the Plaintiffs to bypass the AZO all-together. Since the Plaintiffs would not have to apply for a variance were they to relocate to one of these "by-right" locations, the variance mechanism cannot be seen as a prior restraint. The cases cited by the Plaintiffs at the hearing and in their supplemental brief are not applicable to the present case because none of the defendants in those cases had a by-right system similar to that of the City in this case.

Normally, the Court would proceed to analyze whether or not the "by right" locations provide reasonable alternative avenues of communication for the Plaintiffs. However, the Plaintiffs have abandoned their claims relating to the reasonable alternative avenues of communication, rendering such an analysis moot.

Since the City's variance mechanism does not operate as a prior restraint, there is no need for this Court to embark on an evaluation of whether the Zoning Board of Adjustment has unbridled discretion or whether the mechanism fails to ensure a prompt administrative decision.

**B. The Zoning Board of Adjustment did not violate Central Avenue Video's and Riverside Video's equal protection rights when it denied Plaintiffs' variance requests while granting variances to other adult businesses.**

The unequal application of a facially neutral statute may violate the Equal Protection Clause. *See, e.g., E&T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987)(discussing discriminatory administration of a facially valid law); *see* Compl. ¶¶ 44, 48(h). To prove their equal protection claims, the Plaintiffs must show that

> 1) a governmental agent or body intentionally accorded the plaintiff different treatment than it accorded other, similarly situated persons under the same law;

> (2) either the plaintiff is a member of [a] suspect class or the government's treatment of the plaintiff was entirely arbitrary, irrational, intentional, and unrelated to any governmental interest; and (3) the plaintiff suffered an injury that was caused by the discriminatory treatment.

*Hyatt v. Town of Lake Lure,* 225 F. Supp. 2d 647, 660 (W.D.N.C. 2002)(citations and footnotes omitted); *see GJR Inv., Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998)(similar).

In this case, Central Video and Riverside Video claim that ZBA's granting of variances to other adult businesses deprived them of equal protection under the law, but this Court finds the ZBA's decisions to be within their legal perogative. Under North Carolina law, the Board must use the same standards for each case, but the ultimate decision of the Board can vary with the specific facts of each case. *See Through the Looking Glass, Inc. v. Zoning Board of Adjustment for the City of Charlotte*, 136 N.C.App. 212, 217, 523 S.E.2d 444, 448 (1999).

Here, it appears to the Court that the ZBA did just that: examined each motion for a variance using the same standards, then looked at the individual facts to determine whether or not a variance was appropriate. The ZBA's variance decisions did not distinguish based on the content of speech (*i.e.,* each of the businesses Plaintiffs reference are engaged in the same type of adult speech as were Plaintiffs), but instead were based on factual differences regarding the natural or man-made geographical and/or topographical features between the parcel on which each adult business is or was located and the protected properties and land uses. As the City explains

> since the very purpose behind the regulations is to protect against the effects of the potential secondary 'spillover' effects of adult businesses, it only makes sense that the Council would craft a standard that allows relief from the separation requirements in instances where there is no realistic likelihood that the protected uses will feel any

> spillover effects from the business (*e.g.,* consider a situation where a school lies 800 ft. across a river "as the crow flies," but one-mile by foot or car when one considers the closest bridge).

Defendant's Revised Trial Brief, Document 90, page 12. The City also granted variances to other adult businesses (all with slightly different needs and circumstances), so there is no evidence that the City was using the variance mechanism to discriminate against all adult businesses. The factual differences between the variances requested by Plaintiffs and those granted in other cases are spelled out clearly by the City, and those differences establish a factual and legal distinction so as to defeat Plaintiffs' equal protection claim.

### IV. CONCLUSION

For the reasons set forth above, the Court finds in favor of the City of Charlotte on all remaining issues.

IT IS SO ORDERED.

Signed: May 12, 2008

Graham C. Mullen
United States District Judge